## JAMES JOY *vs.* ANDREW SIMPSON.

Pleading over cures no defects, except those which would be bad only on special demurrer. Duplicity is such an one, but a departure is not. Awards are to be construed liberally. Though their language may embrace more than what was submitted, they will be construed not in fact to embrace more, unless it is expressly shown, that more was laid before the referees and decided.
Referees may decide upon the costs of reference; because a submission of the cause of action embraces, as an incident, the costs which may afterwards arise upon it.

This was an action of debt on a bond, dated May 17, 1814.

The defendant, after oyer of the bond and condition, pleaded, that the referees, therein named, did not, in conformity with the condition, make any award upon the premises by the 30th of May, A. D. 1814.

The defendant replied, that the referees, after hearing the parties, did make an award upon the premises submitted, and which was ready to be delivered on the 30th of May, A. D. 1814. The award was then recited at length, as dated the 26th of May, A. D. 1814; and it contained a direction, " that all actions, controversies, &c. between the parties, " touching the premises," should cease, and the divisional lines between their land, which, with certain trespasses on each other's land, were the subjects submitted, should be established in a prescribed manner, and that the present defendant, before two days, should pay the present plaintiff five dollars damage for " trespasses committed," and $27 18. expenses of referees, which the plaintiff had advanced, and on said sums being satisfied to the plaintiff, mutual releases

Joy
vs.
Simpson.

should be executed by the parties of all demands " con- " cerning the premises aforesaid."

The replication further alleged, that the plaintiff had in all respects observed said award, but the defendant had refused performance.

The rejoinder averred, that on the day of the award, the defendant held a promise in writing against *Joy*, dated August 15th, 1812, by which *Joy* engaged to pay him a rent of $6 per year, so long as the shop of *Joy* remained on a piece of land, which was described in the submission ; and, that when the award was made, one year's rent was due on said writing, which the defendant, by the award, is commanded to release, when in fact this writing was not submitted to the referees.

To this the plaintiff filed a general demurrer.

*Mitchell*, counsel for the plaintiff.

*Ich. Bartlett*, for the defendant.

WOODBURY, J., delivered the opinion of the court.

The rejoinder in this case is insufficient. It undertakes to impeach the award, set out in the replication, on the ground, that the arbitrators exceeded their authority. But, in doing this, it admits, that an award was made, when the plea alleges there was no award ; and this being a departure from the plea, it is bad on general demurrer.(1)

(1) 1 Chitt. Pl. 505.—3 John. 367.

The hypothesis, that an award in any respect beyond the submission is wholly void, and, therefore, as the rejoinder states this award to have been of that character, it states, like the plea, that there was no award, will not remedy the difficulty. The rejoinder would not then be a departure, but it ought to have joined the issue tendered by the replication ; and, though a neglect to do that is bad only on special demurrer, yet the plea, being fully answered by the replication, and the replication not being avoided by a rejoinder, deemed to state the same thing with the plea, the plaintiff on the whole case would still seem entitled to judgment.

The replication, however, is open to objections, and as it spreads all the award before us, the defendant can take ad-

vantage of any substantial defect ; because pleading over cures only what would be bad on special demurrer. 1 *Chitt. Pl.* 647.—15 *John.* 191.—3 *Cran.* 234, *Cook vs. Graham's Adt.*

It is first contended to be bad on account of duplicity ; but that objection, if founded in fact, is cured.

It is further contended, that the replication is bad, because the award, as set out, undertakes to settle all demands, &c. concerning the land described, when only the trespasses and the divisional lines were submitted. Indeed this is the burthen of the rejoinder ; and though, on this construction of the award, some authorities hold such a rejoinder to be permissible ;(1) yet others forbid it,(2) and, without an absolute opinion on this point, we are able, in another view of the case, to decide upon the validity of both the replication and the award ; because we think that the award does not in fact travel out of the submission. Whether this award should, or should not, be construed to embrace demands not submitted, might have been a doubtful question, when courts entertained prejudices against arbitrators from a dread of their popular and increasing jurisdiction. But in more modern times, as references are frequently less expensive than controversies in courts, as some disputes can be better investigated by two or three individuals than by a jury, as the equitable principles, which they may adopt, are in some causes conducive to substantial justice, and as cases are never submitted but by consent of both parties, there would seem to exist no sound reasons against so benign a construction of awards as will enable us to enforce them, wherever consistent with any judicial principles.(3)

It has, therefore, been settled, that an award, though expressed in such general terms, as to include all disputes, may, in its operation, be restricted to the particular disputes submitted ; or, in other language, that " where the words of " an award are so comprehensive, that they may take in " matters not within the submission, yet it shall be presum- " ed, that nothing beyond it was awarded, unless the con " trary be expressly shown." 13 *John.* 28.—*Kyd* 170,

(1) 11 East 187.
(2) 1 Wils. 122.—2 Saund. 84, b.—4 D. & E. 585.

(3) 8 Mass. Rep. 399.— 2 Wils. 268.

Joy
*vs.*
Simpson.

371.—1 *Keble.* 738.—*Cr. Ja.* 577.—2 *Mod.* 309.—2 *John.* 61.—1 *Ld. Ray.* 115-6, *Marks vs. Marriott.*

This rule is founded on the obvious fact, that arbitrators cannot in general know and investigate subjects not submitted ; and if their language appears to embrace other subjects, as other subjects may be within their private knowledge, or may be laid before them by one party, the award shall be considered to embrace others, if it be expressly shown that others were investigated.  But unless it be so shown, though their language, from a want of technical precision, may be too general, the presumption is, that they performed nothing beyond their duty.

(1) 1 Roll.
Rep. 362.

Even as early as *Ingraham vs. Webb,*(1) there was a submission of certain suits as to tithes ; and the award directed, that all suits between the parties should cease ; but it

(2) 2 Bl. Rep.
1119, 1120,
Pickering vs.
Watson.

was held to include only suits on the subject of tithes.(2)

It is also an objection to the replication, that the award, as recited, undertakes to adjudge upon the costs of reference.   In some of the more ancient authorities it was held, that as the costs of reference did not exist at the submission, they could not have been submitted ; and consequently could not be awarded against either party.   Other authorities confined this rule to references by bond, as in the present case ; and, in other modes of reference, held that the referees might decide upon the costs as well as the cause of action.

(3) 2 D. & E.
644.

When *Kyd* composed the text of his treatise on *Awards,* he apprehended, that the case of *Roe vs. Doe,*(3) had overruled the ancient authorities, and that the costs of reference might in all cases, unless prohibited, be embraced in the

(4) Kyd 170.

award.(4)   But in a note, in the second edition, he suggests, that doubts had arisen on this point, under an impression, that *Roe vs. Doe* had not been fully reported ; though in the

(5) Kyd 394.
(6) Willes. 64.

appendix,(5) as the case of *Candler vs. Fuller,*(6) had recently been published, he re-considers the question, and expresses an opinion still in favor of his first impressions. The case in *Willes* is directly opposed to that in *Durnford & East ;* but not having been printed till Nov. 6th, 1799, it was

not cited in the case of *Roe vs. Doe*, which was decided in Nov. 1788.

In 8 *Mass. Rep.* 398, the decision in *Willes* is adopted, without adverting to that in *Durnford & East*; in the 14th *John.* 161, the decision in *Durnford & East* is adopted without citing the case in *Willes*.

The cases in 1 *B. & P.* 34, *Barnes* 58, 123, and 1 *Hen. Bl.* 223, were once thought to favor the decision in *Willes*, but in *Wood vs. O'Kelly*,(1) those cases are examined, and said to have been decided wholly " on the particular terms " of the rules of the reference."

(1) 9 East 436.

It appears, also, in *Grove vs. Cox*,(2) and *Low vs. Vroom*, (3) that the costs of reference are sometimes ordered by the court to be paid equally by the parties; but it will be seen on a scrutiny, that in neither of those cases did the referees make any award upon those costs, and therefore the court apportioned them. This question as to costs has before been raised in this state, in *Jewett & Whiting*, (Hillsborough, April term, 1818); but the cause was decided on other points, and our practice has long been uniform to render judgment on awards, which included the costs of reference. The distinction between awards under bonds and under rules of court is not tenable on the ground assumed; because in both cases alike the costs of reference have not arisen, when the submission is made; and we think, that the reasoning in favor of those decisions, which permits the referees to regulate the costs in all cases, if not restrained by the express terms of the submission, is the most sound, and is more eligible, from the circumstance, that it will not disturb our established practice. The reasoning is this, that all costs are incidents to the causes in which they arise; and, therefore, when the causes are submitted, the costs are submitted. The principle is not novel or forced, that a written instrument, which grants a general power, passes also all incidental powers. *Shep.* 89, 90.—*Com. Di.*, *"Grant,"* E. 11.—15 *John.* 356.—2 *Wheaton* 345.—4 *ditto, M'Culloch vs. State of Maryland.—Federalist No.* 44.

(2) 1 Taunt. 165.
(3) 15 John. 238.

Though this principle, when applied to the grant of political powers, limited in express terms, may be subject to

*Joy*
*vs.*
*Simpson.*

abuse ; yet, in submissions to referees, the operation of it is not apparently hostile to the intention of the parties, nor promotive of injustice.

*Judgment for the plaintiff.*